**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | | |
|---|---|---|
| DEE SIAM MANUFACTURING CO., LTD. and CIMC INTERMODAL EQUIPMENT, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | | Court No. 26-03278 |

**COMPLAINT**

Plaintiffs Dee Siam Manufacturing Co., Ltd. ("Dee Siam") and CIMC Intermodal Equipment, LLC ("CIE"), by and through the undersigned counsel, White & Case, LLP, allege and state as follows.

**ADMINISTRATIVE DECISION TO BE REVIEWED**

1. Plaintiffs contest the final determination issued by the International Trade Administration of the Department of Commerce ("Department") in the countervailing duty ("CVD") investigation of certain chassis and subassemblies thereof from Thailand (Case No. C-549-855) with respect to subject merchandise manufactured and exported by Dee Siam and imported by CIE. Notice of the final determination was published in the *Federal Register* on April 24, 2026. *Certain Chassis and Subassemblies Thereof from the Kingdom of Thailand: Final Affirmative Countervailing Duty Determination*, 91 Fed. Reg. 22133 (Apr. 24, 2026) ("*Final Determination*"); *see also* accompanying *Issues and Decision Memorandum for the Final Determination of the Countervailing Duty Investigation of Certain Chassis and Subassemblies Thereof from the Kingdom of Thailand* (Apr. 20, 2026) ("*Final I&D Memo*").

## JURISDICTION

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c) and Section 516A(a)(2)(B)(i) of the Tariff Act of 1930, as amended ("Tariff Act"), codified as 19 U.S.C. § 1516a(a)(2)(B)(i).

## STANDING OF PLAINTIFFS

3. Plaintiff Dee Siam is a Thai producer/exporter of merchandise subject to the CVD order at issue and Plaintiff CIE is a U.S. importer of subject merchandise. Plaintiffs both participated in the Department's investigation that resulted in the contested determination. Plaintiffs therefore are "interested part{ies}" within the meaning of Section 771(9)(A) of the Tariff Act, as amended, 19 U.S.C. § 1677(9)(A), and have standing to bring this action pursuant to Section 516A(d) of the Tariff Act, as amended, 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS OF THIS ACTION

4. The Department published the contested final CVD determination in the *Federal Register* on April 24, 2026. *Final Determination*, 91 Fed. Reg. 22133. The Department then published the CVD order in the *Federal Register* on June 18, 2026. *Certain Chassis and Subassemblies Thereof from Mexico, Thailand: Countervailing Duty Orders*, 91 Fed. Reg. 36800 (June 18, 2026). Plaintiffs filed their Summons, and are filing their complaint, within the time limits specified in 28 U.S.C. § 2636(c) and Rule 3(a)(2) of the Rules of this Court. Thus, this action is timely filed pursuant to Section 516A(a)(2)(A) of the Tariff Act, as amended, 19 U.S.C. § 1516a(a)(2)(A).

## PROCEDURAL HISTORY AND BACKGROUND

5. On November 20, 2020, after consideration of an investment proposal, the board of CIMC Vehicles (Group) Co., Ltd. ("CV") approved a major investment to fund Dee Siam's

Project Durian. Letter from White & Case LLP to the Department, Re: *Countervailing Duty Investigation of Certain Chassis and Subassemblies Thereof from Thailand: Response to the Second Affiliation Supplemental Questionnaire* (June 6, 2025) at Exhibit 1. As reported, Project Durian was undertaken to give Dee Siam the capability to produce chassis or chassis frames for the North American market. *See*, *e.g.*, Letter from White & Case LLP to the Department, Re: *Countervailing Duty Investigation of Certain Chassis and Subassemblies Thereof from Thailand: Response to Section III of the CVD Questionnaire* (May 27, 2025) ("*Dee Siam Section III Response*") at 1-2. This was a major expansion of Dee Siam's capabilities beyond the existing Project Mango, under which the company assembles complete vehicles for sale in the local Thai market. *See Dee Siam Section III Response* at 1-2, 4.

6. To get Project Durian up and running, Dee Siam needed to, among other startup tasks, construct a new plant and purchase production equipment, including laser cutting and bending machines; automatic welding lines; a sandblasting line; and coating lines. Letter from White & Case LLP to the Department, Re: *Countervailing Duty Investigation of Certain Chassis and Subassemblies Thereof from Thailand: Response to the Fourth Supplemental Questionnaire* (July 21, 2025) ("*Dee Siam 4th Supp. Response*") at Exhibit 6. CV estimated that Project Durian would need six months to achieve full production capability (*i.e.*, May-June 2021). *See Dee Siam 4th Supp. Response* at Exhibit 6. As it happened, Project Durian commenced production of chassis frames in June 2021. *See* Letter from White & Case LLP to the Department, Re: *Countervailing Duty Investigation of Certain Chassis and Subassemblies Thereof from Thailand: Verification Exhibits* (Sept. 24, 2025) ("*Dee Siam Verification Exhibits*") at Exhibit VE-3. To execute the approved investment, CV provided two capital contributions to Dee Siam, the first

installment in April 2021 and the second installment in February 2022. *See, e.g., Dee Siam 4th Supp. Response* at 4.

7. On August 1, 2025, Commerce published its preliminary affirmative CVD determination. *Certain Chassis and Subassemblies Thereof from the Kingdom of Thailand: Preliminary Affirmative Countervailing Duty Determination and Alignment of Final Determination with Final Antidumping Duty Determination*, 90 Fed. Reg. 36132 (Aug. 1, 2025) ("*Preliminary Determination*"); *see also* accompanying *Issues and Decision Memorandum for the Preliminary Affirmative Determination of the Countervailing Duty Investigation of Certain Chassis and Subassemblies Thereof from the Kingdom of Thailand* (Jul. 28, 2025) ("*Preliminary I&D Memo*"). The Department preliminarily found that, "at the time of CV's equity infusions in Dee Siam, Dee Siam did not show an ability to generate a reasonable rate of return within a reasonable period of time from the perspective of a reasonable private investor," and concluded that "Dee Siam was not equityworthy at the time of CV's equity infusion." *Preliminary I&D Memo* at 17.

8. From September 15, 2025, through September 17, 2025, the Department conducted a verification of Dee Siam's questionnaire response. See the Department's Memorandum, Re: *Verification of the Questionnaire Responses of Dee Siam Manufacturing Co., Ltd. in the Countervailing Duty Investigation of Certain Chassis and Subassemblies Thereof from the Kingdom of Thailand* (Mar. 4, 2026) ("*Verification Report*").

9. On March 16, 2026, Dee Siam submitted its case brief. Letter from White & Case LLP to the Department, Re: *Chassis and Subassemblies from Thailand: Case Brief* (Mar. 16, 2026) ("*Dee Siam Case Brief*"). On March 23, 2026, Dee Siam submitted its rebuttal brief. Letter

from White & Case LLP to the Department, Re: *Chassis and Subassemblies from Thailand: Rebuttal Brief* (Mar. 23, 2026) ("*Dee Siam Rebuttal Brief*").

10. On April 24, 2026, the Department published the *Final Determination* in the Federal Register. *See also Final I&D Memo*. The Department continued to find that "Dee Siam was not equityworthy at the time of both CV's 2021 and 2022 equity infusions" and that "these equity infusions provided countervailable benefits to Dee Siam in the amount of the infusions." *Final I&D Memo* at Comment 7.

11. Separately, at verification, the Department found that Dee Siam had not reported certain of its purchases of angles, channels, and tubes under the Transnational Provision of Angles, Beams, Channels, and Tubes for Less-Than-Adequate-Remuneration ("LTAR") program. *Final I&D Memo* at 35. Yet, well before verification, in its benchmark submission dated June 20, 2025, Dee Siam voluntarily had provided a reconciliation of the complete data output covering all raw material purchases during the period of investigation ("POI"), and identified which purchases it considered to be steel inputs subject to the alleged LTAR program. *See* Letter from White & Case LLP to the Department, Re: *Countervailing Duty Investigation of Certain Chassis and Subassemblies Thereof from Thailand: Benchmark Submission* (June 20, 2025); *see also Dee Siam Case Brief* at 14. Dee Siam explained that it understood that purchases of steel products that were further processed or customized beyond a basic angle, beam, channel, or tube to be outside the scope of the Department's request for purchases of angles, beams, channels, and tubes. *Dee Siam Case Brief* at 14–15. Nonetheless, Dee Siam disclosed all such purchases of customized steel inputs in its benchmark submission.

12. The Department's *Verification Report* did not cite any evidentiary support for its quantification of Dee Siam's purported omitted purchases. Even accepting the Department's

figures, the value of the purportedly omitted purchases was minor – amounting to less than one percent of Dee Siam's reported purchases of angles, beams, channels, and tubes by value. *See Dee Siam Rebuttal Brief* at 6-7.

13. The Department nonetheless found that Dee Siam did not act to the best of its ability in reporting these purchases. The Department reasoned that Dee Siam had an obligation to seek clarification from the Department rather than unilaterally excluding purchases it considered to be outside the scope of the request, even though Dee Siam was transparent about its reporting approach. The Department also wrongly found that Dee Siam's June 20, 2025, benchmark submission did not corroborate its claim that it had reported all such purchases because that submission covered only Project Durian and not Dee Siam's other factory, "Project Mango." *Final I&D Memo* at 36–37. On this basis, the Department applied partial adverse facts available to Dee Siam by multiplying the number of omitted transactions identified at verification by the highest calculated transaction-specific benefit for each type of input, and added the resulting amount to the benefit otherwise calculated for Dee Siam under this program. *Final I&D Memo* at 37.

## **STATEMENT OF CLAIMS**

## **COUNT 1: NON-EQUITYWORTHINESS DETERMINATION**

14. Paragraphs 1 through 13 are incorporated by reference.

15. The Department's determination that Dee Siam was not equityworthy at the time of CV's 2021 and 2022 equity infusions is unsupported by substantial evidence on the record and otherwise not in accordance with law. Under 19 U.S.C. § 1677(5)(E)(i) and 19 C.F.R. § 351.507(a), a government-funded equity infusion confers a benefit only if the investment decision is inconsistent with the usual investment practice of private investors in the country in

which the equity infusion is made, considering, among other factors, the recipient firm's current and past financial ratios. *See* 19 C.F.R. § 351.507(a)(4)(A)–(D).

16. In evaluating Dee Siam's financial ratios, the Department focused on 2021, the year in which Project Durian was under construction and did not become operational until the second half of the year, despite that a reasonable private investor examining Dee Siam at the time would have anticipated and discounted weaker financial performance during this start-up period. The Department's decision to disregard this obvious and material context, in favor of a mechanical application of financial ratio benchmarks, was arbitrary, unreasonable, and inconsistent with the statutory and regulatory standard, which requires an assessment from the perspective of a reasonable private investor. A reasonable private investor would have understood that Project Durian, the very purpose of CV's capital contributions, would require time to develop before generating returns.

17. The Department compounded this error by declining to evaluate Dee Siam's equityworthiness on a project-specific basis, notwithstanding that Project Durian was the intended use, and the entire rationale, for CV's capital contributions. The Department's wholesale rejection of the relevance of Project Durian's start-up status, both in assessing Dee Siam's 2021 financial ratios and in declining to consider Project Durian's prospects on a project basis, rendered its equityworthiness determination unsupported by the facts on record and not in accordance with law.

**COUNT 2: ADVERSE FACTS AVAILABLE DETERMINATION**

18. Paragraphs 1 through 13 are incorporated by reference.

19. The Department's decision to apply adverse facts available ("AFA") to Dee Siam's reported purchases of angles, beams, channels, and tubes is unsupported by substantial evidence

on the record and otherwise not in accordance with law. Under 19 U.S.C. § 1677e(b), the Department may draw an adverse inference only where it finds that an interested party "failed to cooperate by not acting to the best of its ability to comply with a request for information." While the "best of its ability" standard "does not condone inattentiveness, carelessness, or inadequate record keeping," it does not permit the Department to penalize a respondent that has cooperated fully and maintained adequate records. *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003).

20. In reporting its purchases of angles, beams, channels, and tubes during the POI, Dee Siam was neither inattentive nor careless, and it maintained adequate records. Dee Siam reported all of its purchases of these steel inputs that it reasonably understood to fall within the scope of the Department's request, as well as its purchases of customized steel inputs that it considered to be further processed beyond the basic steel inputs described in the questionnaire. Consequently, the Department had all the information it needed, even before verification, to make its preferred benefit calculation, and the Department overlooked or mischaracterized this information in reaching its final determination. This renders its decision unsupported by substantial evidence.

21. Moreover, the U.S. Court of Appeals for the Federal Circuit has held that "the purpose of section 1677e(b) is to provide respondents with an incentive to cooperate, not to impose punitive, aberrational, or uncorroborated margins." *F.lli De Cecco di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000). Because Dee Siam's purportedly omitted purchases amounted to less than one percent of its reported purchases of angles, beams, channels, and tubes, the Department's application of AFA was punitive and, thus, not in accordance with law.

**PRAYER FOR RELIEF AND JUDGMENT**

WHEREFORE, Plaintiffs respectfully request that the Court:

(A) Enter judgment in favor of Plaintiffs;

(B) Hold and declare that the Department's determination that Dee Siam was not equityworthy at the time of CV's 2021 and 2022 equity infusions is unsupported by substantial evidence and otherwise not in accordance with law;

(C) Hold and declare that the Department's application of adverse facts available to Dee Siam's reported purchases of angles, beams, channels, and tubes is unsupported by substantial evidence and otherwise not in accordance with law;

(D) Remand this matter to the Department with instructions to recalculate Dee Siam's countervailing duty rate consistent with the Court's decision; and

(E) Grant Plaintiffs such additional relief as the Court may deem just and proper.

Respectfully submitted,

Jay C. Campbell
Cristina Cornejo
Matthew W. Solomon
Chunfu Yan
WHITE AND CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600

Date: August 14, 2026

## CERTIFICATE OF SERVICE

**DEE SIAM MANUFACTURING CO., LTD. and CIMC INTERMODAL EQUIPMENT, LLC V. UNITED STATES**
**CIT Court No. 26-03278**

I, Jay C. Campbell of the law firm White & Case LLP, hereby certify that on August 14, 2026, pursuant to CIT Rule 3(f), I served all interested parties who were a party to the proceeding listed below, by mailing copies of the foregoing Complaint by certified mail, return receipt requested:

**ON BEHALF OF PANUS ASSEMBLY CO., LTD.:**

Richard P. Ferrin
**Faegre Drinker Biddle & Reath LLP**
1500 K Street, N.W.
Washington, DC 20005

**ON BEHALF OF PANUS USA LLC:**

Raymond F. Sullivan
**Law Office of Raymond F. Sullivan**
10440 Little Patuxent Parkway, Ste. 900
Suite 900
Columbia, MD 21044

**ON BEHALF OF PITTS ENTERPRISES, INC. DBA DORSEY INTERMODAL:**

Emily Lawson
**Appleton Luff Pte Ltd**
1700 Seventh Ave.
Suite 2100
Seattle, WA 98101

**ON BEHALF OF HERCULES ENTERPRISES LLC:**

Prentiss Lee Smith
**Baker Donelson Bearman, Caldwell, Berkowitz, PC**
901 K Street NW, Ste. 900
Washington, DC 20001

**ON BEHALF OF U.S. CHASSIS MANUFACTURERS COALITION:**

Robert E DeFrancesco III
**Wiley Rein LLP**
2050 M Street, NW
Washington, DC 20036

______________________________
Jay C. Campbell